No.  90-357

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA, ex rel., FALLON COUNTY,
a body politic and corporate, DELANE BEACH,
GARY LANG and ART KOENIG,

Relator

-v-

DISTRICT COURT OF THE SIXTEENTH JUDICIAL
DISTRICT, Fallon County, Montana

Respondent.

ORIGINAL PROCEEDING: Writ of Certiorari

COUNSEL OF RECORD:

For Relator:

Denzil R. Young; Fallon County Attorney; Baker,
Montana

For Respondent:

Gene Huntley, Baker, Montana

Submitted:  October 12, 1990

Decided:  November 29, 1990

Filed:

FILED
'90 NOV 29 AM 10 25
ED SMITH, CLERK
MONTANA SUPREME COURT

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Relators Fallon County and Delane Beach, Gary Lang and Art Koenig (County Commissioners of that county), herein collectively referred to as Fallon County, have filed an application for writ of certiorari requesting that this Court review the order dated December 29, 1988 of the District Court of the Sixteenth Judicial District, Fallon County, finding the relators in contempt. We grant the writ of certiorari without notice and conclude that the December 29, 1988 order of the District Court should be annulled.

The underlying case is cause No. 4852, Fallon County District Court, in which H. J. Halmans is plaintiff and the relators named herein are defendants. The District Court order of contempt was dated December 29, 1988 and was filed on January 4, 1989. The District Court file shows that the last filing or appearance prior to the December 29, 1988 order was the filing of a brief dated August 9, 1983, resulting in a delay of more than five years. In its order the District Court pointed out that the matter had been deemed submitted, that it was lost in chambers and the court apologized for the delay. We conclude that it is necessary to set forth facts in some detail.

The underlying action was commenced by the filing of a complaint on October 17, 1980. The complaint referred to a gravel road in Fallon County, the east end of which terminated at its intersection with state highway No. 7, about seven miles north of Baker, Montana. The plaintiff alleged that the defendants undertook to change the road by closing and abandoning the east

2

one-quarter mile of the road and curving it back to the east to reenter state highway No. 7 approximately one-quarter mile south of the previous intersection. The complaint alleged that the change in the road and the abandonment of the previous portion was done by the defendants without regard to the controlling laws and requested a permanent injunction restraining the defendants from utilizing the altered road. After various motions, filings and other procedures, the District Court made and entered findings of fact and conclusions of law dated December 29, 1981. The court found that the defendants undertook to change the road by closing and abandoning the easterly one-fourth mile and causing it to turn south to intersect with highway No. 7, which was approximately one-quarter mile south of the previous intersection. The court found that there had been no prior petition from the freeholders for a change in the roadway and also found that the defendants altered the road without prior notice to the public as required by statute. The court did find that the defendants believed the change would be in the interest of the traveling public. In its conclusions of law, the District Court referred to § 7-14-2101(1)(a)(i), MCA (1981), which provided that the general power of the county commissioners relating to roads is to lay out, maintain, control and manage roads as provided in that section. The court quoted the portion of the section which provided that each board shall survey, view, lay out, record, open, work and maintain county roads which are petitioned for by freeholders. In addition it referred to § 7-14-2601(1), MCA (1981), which provided

3

that any ten or a majority of the freeholders of a road district may petition the board in writing to open, establish, construct, change, abandon or discontinue any county road. The District Court then concluded that the defendants were without authority to alter the county road without having received a petition or holding the public hearing required by law. The District Court executed its undated Judgment which was filed on January 12, 1982 which decreed that the defendants had no authority to change the road by closing and abandoning and causing it to turn in the manner set forth. In addition, the judgment stated as follows:

> (2) Absent the utilization by defendants of the appropriate procedure in the future defendants are permanently enjoined from abandoning the road as it was before the indicated change and are permanently enjoined from using the road as changed. Defendants are directed to restore the road in question to its original configuration.

The court adjudged that the defendants had no authority to attempt to abandon the road and any attempted abandonment was void. In a specific indication that it expected that the defendants would take the appropriate steps under the statute to abandon and approve the road changes, the court noted the inclement weather at that time of year and ruled that the changes required by the judgment should be done as soon as weather reasonably permitted.

The attorney for the defendants filed a motion for stay of execution on April 22, 1982. Attached to the motion was a copy of a Petition to Alter a Roadway which was signed by more than ten of the freeholders residing in the road district whereby the petitioners requested the county commissioners of Fallon County not

4

to restore the roadway to its original right angle but to leave the roadway in the present rebuilt location. The petition pointed out that there had been no additional cost and that the disadvantage of the old approach was that it was located immediately south of the crest of a hill and created a snow problem and a traffic hazard. It pointed out that the new approach was situated at the school bus stop alleviating a traffic hazard created by vehicles coming out of the old approach and stacking up at the school bus stop. The freeholders further petitioned the county commissioners to abandon the old right angle approach to the highway. The substance of the Motion for Stay of Execution was that a hearing had been conducted by the Board of County Commissioners even though not required by statute and that twelve people testified in favor of the change and the only opposition were Bert Halmans and John Halmans and their counsel. The motion pointed out that the county commissioners stand ready to restore the roadway as required by the order of the District Court but that the freeholders desire the present roadway pattern. The motion therefore requested a stay of execution of the judgment, and a review of the proceedings of the county commissioners to determine the adequacy of the petition and the proceedings. Notice of motion was given to opposing counsel. The District Court file does not indicate that the motion was ever considered or ruled upon by the District Court.

On July 12, 1983, the plaintiff filed an affidavit for contempt requesting that the court impose civil contempt sanctions against the defendants until they comply with the order of January

5

12, 1982. An order to show cause was issued and served upon the defendants. Extensive briefs were filed by both sides. The matter came on for hearing before the District Court on August 3, 1983. A copy of a Resolution Granting Road Petition, dated May 17, 1982, was filed by the Board of County Commissioners of Fallon County. That Resolution set forth the details of the filing of the petition by more than ten freeholders, the giving of notice as provided by statute to the public, the holding of a hearing attended by twelve of the freeholders of the road district, a notation that the petition was signed by more than twenty-five residents of the road district and also signed by twenty-one persons who are frequent users though not freeholders. The Resolution pointed out that all of the witnesses save and except H.J. Halmans and his son, John Halmans, approved the present configuration. The Board stated that it was totally familiar with the roadway and found that the petition substantially complied with the requirements of law and that no further investigation concerning the roadway was necessary. The Board then resolved that the new roadway was desired by the vast majority of freeholders, that the proceedings referred to vested the Board with jurisdiction to alter the roadway and that the petition to alter the roadway should be granted and that the old roadway was deemed abandoned. The Resolution further stated that the resolution and granting of the petition was conditioned upon review by the District Court in the civil action in which the District Court found the Board lacked jurisdiction to alter the roadway; and if the District Court should decide that the

6

proceedings were inadequate, then the commissioners would restore the roadway to its original condition. Following the hearing, briefs were submitted, the last of which was the brief previously mentioned which was filed on August 9, 1983. Nothing further took place in the cause for more than five years when the District Court issued its order of December 29, 1988, finding the defendants in contempt of court. The contempt order provided that the defendants may purge themselves by the payment of attorney fees and costs, payment of damages in the amount of $1,000, and abiding by the original court order. It is from that order of contempt that the proceedings in certiorari are brought to this Court. In that order the District Court stated that after a prior hearing in this cause the court enjoined the defendants from changing a county road from its prior location without following the procedure provided by law and that the defendants failed to abide by that court order. No reference was made in the Order to the proceedings on the part of the defendants to comply with the statutory requirements for abandonment and construction of a new road, and no reference to the petition, notice, and resolution adopted by the defendants or the notice of the 1983 hearing.

This Court has now been furnished with a copy of the transcript of the proceedings before the District Court on August 3, 1983. We note in particular that the transcript was prepared and certified on August 17, 1990 and filed with the Clerk of the District Court on August 27, 1990. As a result it is apparent that after a delay of more than five years the judge of the District

7

Court did not have available for his review the same transcript which we have considered.

After a careful review of the file, we are not able to determine if the District Court had the opportunity of considering the various motions and instruments which had been filed, including the petition filed by the freeholders and the resolution adopted by the Board of County Commissioners. From the order of contempt of the court, it appears likely that none of these matters came to the District Court's attention.

The transcript shows that the Chairman of the Board of County Commissioners testified in the August 3, 1983 hearing. He testified that he had relied upon a letter from the Highway Department of the State of Montana which reviewed the safety aspects of the former approach and pointed out that the desired safe stopping distance was 1050 feet but that the old approach only gave 700 feet. The chairman testified as to the public hearing, the matters presented and the conclusions reached on the part of the Board of County Commissioners. He testified that the county attorney had asked the state to perform a survey on the corners and angles as contained in the copy of the letter. The chairman further testified that the proceedings which the county commissioners had taken were conducted upon the advice of the county attorney and that the county attorney had advised them that the proceedings gave them jurisdiction to alter the roadway.

In the plaintiff's opposition to the petition for certiorari, he points out that the petition did not state the "owners affected"

and "whether the owners who can be found consent thereto" as required by § 7-14-2602, MCA. He also argues that the commissioners did not cause an investigation to be made of the feasibility, desirability and cost as required under § 7-14-2603, MCA, and did not make a finding as to the amount of damages sustained by each owner.

As mentioned, the proceedings suggest that the District Court did not consider any of the matters presented at the hearing nor the various papers filed with it, including the petition and resolution. The transcript also demonstrates that the Board of County Commissioners had the benefit of the letter from the Montana Highway Department and that the commissioners not only were familiar with the road, but engineered it to determine whether the road was safe.

Our careful review of the transcript and the record has caused us to conclude there was not a basis for the issuance of the order of contempt by the District Court. We conclude the record demonstrates that the defendants had followed the procedure originally suggested by the District Court in the abandonment of the old road and approval of the changed road.

We note that the Judgment filed in the District Court on January 12, 1982 pointed out that the defendants are permanently enjoined from abandoning the road as it was before the indicated change, and were permanently enjoined from using the road as changed "absent the utilization by defendants of the appropriate procedure." It may be that the parties will conclude that it is

9

appropriate to request the District Court to dissolve any injunction.

This opinion shall constitute a judgment under the statute specifically annulling the contempt order dated December 29, ~~1989~~ *1988*, which found the relators in contempt.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices